**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MARQUAN D. WATSON, a minor, by and
through his next friend and legal representative,
KENYA WATSON, guardian of the ESTATE OF
MARQUAN D. WATSON**                                                                 **PLAINTIFF**

**v.**                                                        **CIVIL ACTION # 2:07cv100-KS-MTP**

**JONES COUNTY SCHOOL DISTRICT, by and
through the JONES COUNTY SCHOOL BOARD
OF EDUCATION, its SUPERINTENDENT OF
EDUCATION, THOMAS PRINE, SCHOOL
BOARD MEMBERS and/or TRUSTEES, and
COOPER POPE, in his official and individual
capacities**                                                                            **DEFENDANTS**

## <u>Memorandum Opinion and Order</u>

This cause is before the Court on the motion for summary judgment [Doc. # 43] (July 24,

2008) filed by Defendants Jones County School District ("JCSD"), Thomas Prine,

Superintendent in his official capacity, and Cooper Pope, in his official and individual capacities.

Defendants contend that there is no genuine issue of material fact regarding any of Plaintiff's

claims and that they are entitled to judgment as a matter of law.  Because the Plaintiff has

provided insufficient evidence to substantiate his claims, there is no genuine issue as to any

material fact and the Defendants are entitled to judgment as a matter of law.  Consequently, the

motion for summary judgment should be **granted** and the case should be **dismissed with**

**prejudice**.

# I. FACTUAL BACKGROUND

Although the facts of this case are presented in the light most favorable to the Plaintiff, the Court notes that most of the relevant facts are not in dispute. Plaintiff Marquan Watson was a student at Northeast Jones Middle School (the "School") in 2006. *See* Def.'s Ex. F at 19-21 [Doc. #43-7] (July 24, 2008). Plaintiff and several other students were involved in an altercation on April 13, 2006, which ultimately led to Plaintiff's arrest and expulsion from the School. *Id.* at 27, 53; Def.'s Ex. M [Doc. #43-14] (July 24, 2008); Def.'s Ex. D at 49-51 [Doc. #43-5] (July 24, 2008). Plaintiff, who is black, contends that the Defendants' response to the altercation was due to intentional racial discrimination and indicative of the Defendants' systemic discrimination against black students. *See* Pl.'s Amend. Comp. [Doc. #16] (January 28, 2008). Accordingly, Plaintiff alleges false arrest under state law as well, violations of 42 U.S.C. §§ 1981, 1983, and 1985, Title VI of the Civil Rights Act of 1964, the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, and seeks injunctive relief. *Id.*

The altercation at the School arose after a white student, Blake Cooley, used racial epithets to describe several black students. Pl.'s Ex. C at 16 [Doc. #43-4] (July 24, 2008). Plaintiff and his cousin, Tevin Newell, overheard the derogatory comments. *Id.* Newell directed the Plaintiff to grab Cooley to prevent him from fleeing, telling the Plaintiff that he planned to hit Cooley. *Id.* at 16, 19. According to the Plaintiff, after hearing Newell's plan, he grabbed Cooley. *Id.* at 16. Plaintiff contends that Cooley shoved Plaintiff to escape his grasp and then was hit by Newell.[1] *Id.* The blow caused Cooley to bleed from a cut under his right eye, *id.* at

---

[1] The Defendants contend that the Plaintiff was holding Cooley at the time Newell punched him. Def.'s Br. at 2 [Doc. #44] (July 24, 2008).

22, and eventually led to the eye swelling shut.  Def.'s Ex. K [Doc. #43-12] (July 24, 2008).

Shortly after the altercation, all three students were taken to Principal Cooper Pope's office.  Def.'s Ex. F at 27.  After learning of the altercation, Pope investigated by speaking with Cooley, Newell, and the Plaintiff in addition to the students who witnessed the altercation.  *Id.* Pope obtained written statements from several of the students.  *See id.* at 27-29.  The Plaintiff gave multiple statements, the first of which indicated that he was not involved in the altercation. *Id.* at 28-30.  Pope found the Plaintiff's initial statement to be inconsistent with the accounts provided by the other students and therefore told Plaintiff to provide a revised statement.  *See id.* at 30; *see also* Def.'s Ex. H at 5 [Doc. #43-9] (July 24, 2008) (another student's account of the altercation indicated that the Plaintiff held Cooley from behind).  Plaintiff then provided a statement in which he admitted his participation in the altercation.  *Id.*; *see* Def.'s Ex. J [Doc. #43-11] (July 24, 2008).  Newell's statement corroborated this account of what happened.  *See* Def.'s Ex. H at 6 ("I told [Plaintiff] to hold [Cooley] and I hit [Cooley].").  None of the students' parents, guardians, or attorneys were present during this investigation.  *See* Def.'s Ex. F at 27.

At the conclusion of the investigation, the school resource officer, Ronnie Sumrall, contacted juvenile detention with Pope's permission.  *Id.* at 36, 38-39.  A pick-up order was issued by the Jones County Youth Court Judge, Gaylon Harper.  *Id.* at 37; Def.'s Ex. I [Doc.#43-10] (July 24, 2008).  A Jones County sheriff's deputy came to the school and arrested the Plaintiff and Newell.  *See* Def.'s Ex. F at 37; Def.'s Ex. C at 28.  Cooley was not arrested.  Def.'s Ex. F at 45-46.

Newell and the Plaintiff were detained at the Jones County Youth Detention Center. Def.'s Ex. I.  The day after the altercation, Judge Harper conducted a hearing and determined that

Newell and the Plaintiff should remain detained.  Def.'s Ex. E at 18-19 [Doc. #43-6] (July 24,

2008) (Judge Harper described the altercation as "a vicious beating").  Judge Harper presided

over a second hearing three days later.  *See* Def.'s Ex. D at 26.  At the second hearing, Judge

Harper ordered the Plaintiff and Newell released from detention.  Def.'s Ex. C at 35.  Nobody

associated with the JCSD or employed at the School was present at either hearing.  *See* Def.'s

Ex. D at 21-22, 26-27.  On a later date, Judge Harper ordered the Plaintiff to pay restitution to

Cooley, Def.'s Ex. D at 31-32, and terminated the proceedings against the Plaintiff.  Def.'s Ex. R

[Doc. #43-19] (July 24, 2008).

Five days after the altercation, Pope sent a letter to the committee members of the Jones

County School Board.  Def.'s Ex. K.  In the letter, Pope indicated that the Plaintiff had

committed a "violent act . . . in violation of . . . the Jones County Schools Policy Manual."  *Id.*;

Def.'s Ex. S at 39 [Doc. #43-20] (July 24, 2008) (the Student Handbook indicates that the

principal may suspend or recommend expulsion of a student who causes physical injury to

another person).  For that reason, Pope recommended that the Plaintiff be expelled from the

School for one calendar year and placed in an alternative school.  Def.'s Ex. K.  Pope made the

same recommendation regarding Newell.  Def.'s Ex. F at 53.  Pope recommended that Cooley

receive a three-day suspension.  *Id.*

The Plaintiff was entitled to a hearing before the Jones County School Board Discipline

Hearing Committee due to Pope's recommendation.  *See* Def.'s Ex. L at 1 [Doc. #43-13] (July

24, 2008).  The hearing was held on April 24, 2006; the Plaintiff and his family received notice

and were present at the hearing.  Def.'s Ex. I; Def.'s Ex. D at 39.  The Plaintiff and his family

had the opportunity to address the committee, cross-examine witnesses, and present evidence.

Def.'s Ex. L at 1-2.  Afterward, the committee accepted Pope's recommendation that the Plaintiff be expelled for a calendar year.  Def.'s Ex. M.

The JCSD informed the Plaintiff and his family that they had a right to request a second hearing, which would be held before the entire School Board.  *See* Def.'s Ex. N [Doc. #43-15] (July 24, 2008).  Upon the Plaintiff's request the hearing was held.  Def.'s Ex. D at 46-47.  After the hearing, the School Board decided to reduce the Plaintiff's punishment; the Plaintiff was expelled for the remainder of the school year only.  *Id.* at 50.

## II.  STANDARD OF REVIEW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED R. CIV. P. 56(b).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Id.*  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This is true "since a complete failure of proof concerning an essential element of the nonmoviing party's

5

case necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Anderson*, 477 U.S. at 247). If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. APPLICATION AND ANALYSIS

As noted above, the Plaintiff asserts several claims stemming from the altercation at the School and the Defendants' response thereto. The Court will consider the merits of the Defendants' motion with regard to each claim in turn.

### A. False Arrest

The Plaintiff contends that the Defendants are liable under state law for having him

falsely arrested.  Pl.'s Amend. Comp. at ¶ 18.  The parties agree that Mississippi substantive law

governs this claim.  Def.'s Br. at 7; Pl.'s Br. at 6 [Doc. #47] (August 7, 2008); *see also In re*

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *cert. denied by* 128 S. Ct.

1230 (deferring to the parties' agreement on which state's substantive law controlled).  Under

Mississippi law, "[f]alse arrest is an intentional tort, arising when one causes another to be

arrested falsely, unlawfully, maliciously and without probable cause."  *City of Mound Bayou v.*

*Johnson*, 562 So. 2d 1212, 1218 (Miss. 1990).  "The elements of a claim for false arrest or

imprisonment are two-fold.  They include: (1) The detention of the plaintiff and the unlawfulness

of such detention; (2) Imprisonment and the falsity thereof."  *Parker v. Miss. Game and Fish*

*Comm'n*, 555 So. 2d 725, 728 (Miss. 1989).  The Defendants contend that the Plaintiff has failed

to offer proof of either of the essential elements of the claim.  Def.'s Br. at 7 [Doc. #44] (July 24,

2008).

    **1.  Detention/Arrest**

    The Defendants contend that the Plaintiff's claim fails as a matter of law because no

Defendant was directly responsible for Plaintiff's detention or arrest.  Def.'s Rep. Br. at 2 [Doc.

#48] (August, 13, 2008).  Indeed, the undisputed facts establish that Plaintiff was physically

placed under arrest by a Jones County Sheriff's Department deputy and that the decision to arrest

was made by the Jones County Youth Court.  However, these facts are not necessarily dispositive

with regard to the first element of the claim.

    "To hold a defendant liable for false imprisonment through false arrest, plaintiffs must

prove that the defendant personally and actively participated in the arrest, directly *or indirectly*."

*C-1 by P-1 v. City of Horn Lake*, 775 F. Supp. 940, 952 (N.D.Miss. 1990) (emphasis added)

(citing *Sunshine Jr. Food Stores v. Aultman*, 546 So. 2d 659, 662 (Miss. 1989)).  "One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment. " RESTATEMENT (SECOND) OF TORTS § 45A (1965), *quoted by Aultman*, 546 So. 2d at 662.  "Thus, the major question is whether [Pope's] actions were the equivalent, in words or conduct, of stating, 'Officer, arrest that man!' " *Aultman*, 546 So. 2d at 663.

In this case, Sumrall, the School's resource officer contacted juvenile detention regarding the altercation. Def.'s Ex. F at 36.  Pope conceded at his deposition that Sumrall could not have contacted juvenile justice or asked that a pick-up order be issued without Pope's authority and consent. *Id.* at 38-39.  In addition, the decision to arrest the Plaintiff was based on the investigation conducted by Pope and Sumrall. *Id.* at 36.  At the least, these facts create a genuine issue as to whether any Defendant personally and actively participated in Plaintiff's arrest.  As a result, the Defendants are not entitled to summary judgment on this ground.

**2.  Unlawfulness of the Detention**

The Defendants also contend that the Plaintiff cannot establish that the arrest was unlawful.  The Court finds this contention to be meritorious because the facts of this case, viewed in the light most favorable to the Plaintiff, establish that the arrest was lawful and based on probable cause.[2]  "[P]robable cause requires a concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." *Nassar v. Concordia Rod & Gun Club*,

---

[2] "When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed." *Nassar*, 682 So. 2d at 1037; *accord Greer v. Turner*, 639 F.2d 229, 230 (5th Cir. Unit B Mar. 1981).  State law governs the determination of whether probable cause existed for the arrest. *See McNulty v. J.C. Penny Co.*, No. 3:07CV68, 2008 U.S. Dist. LEXIS 41124, at *4 (S.D.Miss. May 23, 2008); *Williams v. Ryder/P.I.E. Nationwide, Inc.*, 786 F.2d 854, 857 (8th Cir. 1986).

682 So. 2d 1035, 1037 (Miss. 1996).[3]  Here, there were ample reasonable grounds to form an

honest belief that the Plaintiff had been involved in a premeditated act of violence perpetrated

against another student.  First, Cooley had physical symptoms indicating that he had been

assaulted.  Second, several students who had witnessed the altercation told Pope about the

Plaintiff's role in the assault.  Third, the Plaintiff admitted his role in the assault, conceding that

he grabbed Cooley at Newell's request, knowing that Newell planned to punch Cooley.  Fourth,

Newell's version of what happened was consistent with the Plaintiff's.  Fifth, Pope testified that

he believed the Plaintiff's original story to be untruthful, given the fact that all of the other

students' accounts differed from the Plaintiff's but were consistent with one another.  Def.'s Ex.

F at 30.  Hence, all of the facts in the record establish that Pope had an honest and reasonable

belief that Plaintiff had participated in the assault at the time he authorized Sumrall to contact the

Jones County Youth Court.[4]  Based on these uncontroverted facts, the Court holds as a matter of

law that the detention of the Plaintiff was based on probable cause and was not false or unlawful.

The Plaintiff argues that there cannot have been probable cause for the arrest, however,

because the Plaintiff contends that Pope's investigation was illegal.  Specifically, Plaintiff

contends that Pope's interrogation of him without the presence of a parent, guardian, or attorney

---

[3] The *Nassar* Court defined probable cause in the context of an action for malicious
prosecution.  Mississippi Courts have employed the same probable cause standard for malicious
prosecution and false arrest claims.  *See*, *e.g.*, *Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66,
76 (Miss. Ct. App. 2005).

[4] In addition, the Court notes that the Plaintiff's family paid restitution to Cooley for the
Plaintiff's involvement in the assault.  While this does not affect the probable cause inquiry
because it occurred after Pope's investigation, it supports the conclusion that the arrest was not
"false."

violated his constitutional rights to counsel and against self-incrimination.  Pl.'s Br. at 5-7.  In support of this contention, Plaintiff cites *In re Gault*, 387 U.S. 1 (1967).  Pl.'s Br. at 5-7.

Plaintiff's argument finds no support in *Gault*, however, or any other authority of which this Court is aware.  *Gault* stands for the proposition that minors have various constitutional rights –  including the right to notice, counsel, confrontation, cross-examination, and privilege against self-incrimination  – in juvenile court proceedings.  387 U.S. 1.  The *Gault* Court specifically explained that it was not "concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process."  387 U.S. at 13.  Nonetheless, the Plaintiff asks this Court to hold that students have all of the constitutional rights afforded to juveniles in delinquency adjudications during investigations at school conducted by school employees.  The parties' briefs and this Court's independent research have revealed no authority supporting the proposition that the aforementioned constitutional rights attach during investigations conducted by school administrators.  *See, e.g.*, *Salazar v. Luty*, 761 F. Supp. 45, 47-48 (S.D.Tex. 1991) (holding that the right to counsel and privilege against self-incrimination apply "almost only to criminal prosecutions" and refusing to apply them in the context of a school's investigation); *Pollnow v. Glennon*, 594 F. Supp. 220, 224 (S.D.N.Y. 1984) (rejecting student's argument that he should have been advised to call his parents before discussing incident that led to his suspension as worthy of only "scant consideration"); *Jarmon v. Batory*, No. 94-0284, 1994 U.S. Dist. LEXIS 8902, at *32 (E.D. Pa. June 28, 1994) ("students facing disciplinary action in public schools are not entitled to *Miranda* warnings."), *affirmed by* 55 F.3d 632 (5th Cir. 1995); *Brian A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 511 (M.D.Pa. 2001) (same).  As a result, this Court concludes that Plaintiff's argument is without merit; Pope's

investigation did not violate Plaintiff's constitutional rights and did not render Plaintiff's arrest illegal.  Furthermore, even if this Court were to disregard Plaintiff's confession, the Court would still conclude that there were sufficient evidence for Pope to have probable cause to have Plaintiff arrested.[5]  As a result, there is no genuine issue as to the lawfulness of Plaintiff's arrest and the Defendants are entitled to dismissal of the claim as a matter of law.

## B.  42 U.S.C. § 1981

To prevail under section 1981, the Plaintiff must establish that (1) he is a member of a racial minority; (2) the Defendants intentionally discriminated against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).  There are four activities enumerated in section 1981:

> 1. the right to make and enforce contracts;
>
> 2. the right of equal access to the judicial process to sue, be parties, give evidence;
>
> 3. the right to full and equal benefit of all laws and proceedings for the security of persons and property;
>
> 4. the right to subjection to like punishments, pains, penalties, taxes, licenses, and exactions of every kind.

*Kokes v. Angelina Coll.*, 220 F. Supp. 2d 661, 665 (E.D.Tex. 2002); *see* § 1981.  The Court will assume that Plaintiff relies on the statute's "like punishments" clause.  *C.f. Priester v. Starkville*, No. 1:03CV90, 2005 WL 2347285, at *3 (N.D.Miss. Sept. 26, 2005) (holding that the

---

[5] The Plaintiff's argument that the arrest was unlawful because it was based on Pope's racial animus, Pl.'s Br. at 7, is inapposite because the propriety of a decision to arrest turns on objective reasonableness, not on the Defendant's intent.  *Id.* (citing *Wallace v. Thornton*, 672 So. 2d 724, 727 (Miss. 1996)).

availability of public education is not based on a contractual relationship).

For summary judgment purposes, courts analyze § 1981 claims under the burden-shifting scheme used in Title VII cases as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996). "To succeed on a claim of intentional discrimination under . . . Section 1981, a plaintiff must first prove a prima facie case of discrimination." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). This can be accomplished "through a four-element test that allows an inference of discrimination," *id.*, or "by direct evidence." *Bellows*, 118 F.3d at 274. Regardless of how a plaintiff makes the burden shift, defendants can meet the burden by articulating a legitimate, non-discriminatory reason for the action in question. *See Young v. City of Houston*, 906 F.2d 177, 181 (5th Cir. 1990). "Then, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for unlawful discrimination." *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002). To prove that a proffered reason is pretextual, the Plaintiff must prove both that "the reason [given] was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *but see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

## 1. Elements of Prima Facie Case

### (a) First Element of Prima Facie Case

The first element of the prima facie claim of racial discrimination is undisputably met because the Plaintiff, a black male, is a member of a racial minority.

**(b)  Second Element of Prima Facie Case**

Plaintiff alleges that Pope intentionally expelled him because of his race.  In support of this allegation, Plaintiff offered the following evidence:

First, Plaintiff's mother and grandmother testified that a committee member of the Jones County School Board stated at Newell's hearing that "black people might as well get used to being called niggers."  Def.'s Ex. D at 44-45; Def.'s Ex. E at 64-65.  Neither Plaintiff's mother nor his grandmother actually heard this comment at the time it was allegedly stated, however, and this Court will therefore give no weight to this testimony.  *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor [the appellate court] may properly consider hearsay evidence in . . . depositions.").

Second, the Plaintiff has submitted disciplinary records allegedly supporting the conclusion that while minority students account for 22% of the student body, Def.'s Ex. G at 27 [Doc. #43-8] (July 24, 2008), black students account for 39% of the disciplinary actions taken. Pl.'s Ex. 5 [Doc. #46-6] (August 7, 2008).

The probative value of this statistical evidence is negligible.  *Tasby v. Estes*, 643 F.2d 1103, 1108 (5th Cir. Unit A Apr. 1981) ("[S]tatistical proof that black students are disciplined more frequently and more severely than [other] students has limited probative value.").  No inference of discriminatory intent is warranted by such statistics where the party providing them "fails to account for the many variables at work in the process of disciplining school children." *Id.*  "[A]bsent a showing of arbitrary disciplinary practices, undeserved or unreasonable punishment of black students, or failure to discipline white students for similar misconduct," this sort of evidence does not constitute substantial proof "that the disproportionate punishment of

black students in the [district] is the product of a racially discriminatory purpose."  *Id.*  In this case, the Plaintiff has not accounted for the many variables at work in the disciplinary process and, as a result, these statistics are insufficient to raise an inference of discriminatory intent.

Third, Plaintiff's grandmother alleges that Pope referenced the race of the students involved in the altercation during a meeting with Plaintiff's mother and grandmother.  Def.'s Ex. E at 15.  Plaintiff's grandmother and mother met with Pope for 20-25 minutes on the day of the altercation after the Plaintiff had been arrested.  Def.'s Ex. D at 14.  Plaintiff's grandmother alleges that sometime during this meeting Pope expressly referenced the students' race when explaining why he had deemed the assault sufficiently serious to warrant students' arrest.  Def.'s Ex. E at 15.  Neither Plaintiff's mother nor Pope himself testified at their respective depositions that Pope had raised the issue of race.  *See* Def.'s Ex D; Def.'s Ex. F.  Nonetheless, as this Court must resolve factual controversies on behalf of the Plaintiff, the Court finds that Pope did reference the students' race.  In addition, as the Court must draw all justifiable inferences in favor of the Plaintiff, the Court holds that the reference creates an inference of racial discrimination, albeit by a slim margin.

### (c)  Third Element of Prima Facie Case

The third element of the prima facie case is met because the arrest and expulsion of the Plaintiff constitute punishment and/or penalties under § 1981.[6]

---

[6] The Defendants contend that the § 1981 claim should be dismissed solely because there is no contractual relationship at issue in this case.  Def.'s Br. at 7-9.  "In most [§ 1981] cases, . . . the 'enumerated activity' implicated is the right to 'make and enforce contracts.' "  *Walker v. Uncle Bens*, No. 4:97cv65, 1998 U.S. Dist. LEXIS 4648, at *8 (N.D.Miss. Mar. 30, 1998).  As discussed, however, a § 1981 claim is viable if *any* of the activities enumerated in the statute is affected by the discrimination.  *Bellows*, 118 F.3d at 274; *see also Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) ("Section 1981 . . . prohibits intentional race discrimination with

**2.  Proffered Non-discriminatory Explanation and Pretext**

The Court now turns to the nondiscriminatory explanation articulated by the Defendants to justify the punishment imposed.  The Defendants have produced evidence that the Plaintiff and Newell planned and executed an assault on another student, injuring the student in the process. Moreover, the Defendants have produced evidence that acts of violence are expressly deemed an appropriate basis for expulsion under the Jones County Schools Policy Manual.  Accordingly, the Defendants have articulated a legitimate, non-discriminatory reason for having the Plaintiff arrested and expelled.

Reviewing the record in its entirety, the Court finds that the Plaintiff has not provided sufficient evidence of pretext to create a genuine issue of fact.  Based on the record evidence, no reasonable fact finder could conclude that the Defendants' proffered reason was false and that the decision to expel and arrest Plaintiff was based on racial discrimination.

Other than the passing reference to the race of the students by Pope, Plaintiff has provided no competent evidence of pretext.  As stated above, by drawing all inferences in favor of the Plaintiff, the Court concludes that Pope's reference to the students' race raises the possibility that racial discrimination was his basis for expelling the Plaintiff and having him arrested.  It is not the case, however, that Pope used a racial slur or otherwise indicated a bias against blacks.  Thus, the inference drawn is extremely tenuous and cannot, without more, suffice to create a genuine issue of fact regarding pretext. *See Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) ("A mere scintilla of evidence of pretext does not create an issue of material fact in all

---

respect to certain enumerated activities."); *but see Starkville Sch. Dist.*, 2005 WL 2347285. Accordingly, the Defendants' argument is meritless.

cases."); *see also Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997) ("it is possible for a plaintiff's evidence to permit a tenuous inference of pretext and, by extension, discrimination, and yet for the evidence to be insufficient as a matter of law to support a finding of discrimination."). The Plaintiff has produced no evidence that he would not have been arrested or expelled were he not black.[7] For example, he has not established that white students are not subjected to the same punishments. To the contrary, the record indicates without controversy that Pope has recommended that white students be arrested and adjudicated by the juvenile system as well. Def.'s Ex. F at 50.

In addition, the record evidence overwhelmingly supports the nondiscriminatory basis provided by the Defendants. First, the evidence establishes that Plaintiff was actually involved in

---

[7] In his brief, Plaintiff contends that the disparate punishments handed down to himself and Newell as compared to Cooley are probative of the Defendants' discriminatory intent. *See* Pl.'s Br. at 7 n.4. This Court rejects the contention that Cooley is a serviceable comparator in this case. While Cooley's use of racial epithets is highly objectionable, it is certainly not the equivalent to the use of coordinated and premeditated violence which leads to injury. Indeed, while the Jones County Schools Policy Manual expressly lists "fighting" as a "serious violation[] of the discipline code" it does not explicitly deem crude or offensive language to be such. Def.'s Ex. S at 40. Accordingly, the fact that Cooley was suspended but not expelled is not probative of the Defendants' discriminatory intent.

Similarly, the Court does not afford weight to evidence of disparate punishment that is not based on personal knowledge. *See Martin*, 819 F.2d at 549. At her deposition, Plaintiff's grandmother indicated that in a incident occurring a few weeks before the Plaintiff's altercation, three black students had fought on the school bus. Def.'s Ex. E at 82. She indicated that while one student was holding another, the third beat the student who was being held. *Id.* The Plaintiff's grandmother testified that the "boy that did the holding never went to jail, nor did he – nor was he suspended from school." *Id.* There is no indication that this testimony was based on personal knowledge, however, given the fact that it took place on a school bus. Plaintiff's grandmother did not testify, for example, that she had been on the bus during the fight or that she had otherwise observed it. *Id.* In addition, she did not allege or demonstrate that she had firsthand knowledge of the disciplinary measures taken against those allegedly involved in the fight. *Id.* Finally, there is no indication that the fight on the bus was a premeditated and coordinated attack. *Id.* As a result, this Court cannot afford weight to this evidence.

the assault.  Second, there is no evidence that the arrest and expulsion was excessive or not

justified under the circumstances.  Judge Harper, an objective third party labeled the Plaintiff's

actions to be "vicious"; after reviewing the fruits of Pope's investigation, Judge Harper ordered

the Plaintiff to be detained and ultimately to pay restitution to Cooley.  Finally, the Jones County

Schools Policy Manual expressly provides for suspension or expulsion in response to acts of

violence and the act of violence in question was coordinated, premeditated, and led to injury.

Given the almost total lack of evidence of pretext and uncontroverted evidence

substantiating the proffered nondiscriminatory reasons, this Court concludes that there is no

genuine issue as to pretext.  As a result, the Defendants are entitled to judgment as a matter of

law with regard to Plaintiff's § 1981 claim.

### C.  42 U.S.C. § 1983

Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"To state a claim under § 1983, plaintiffs must allege two elements: first, that they were

deprived of a right or interest secured by the Constitution and laws of the United States, and

second, that the deprivation occurred under color of state law."  *Doe v. Rains County Indep. Sch.

Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).  The Plaintiff contends that the Defendants' actions

deprived him of the right to be free from false arrest (and/or false imprisonment), the right to

17

equal protection of the laws, and the right to due process.  Pl.'s Amend. Comp. at ¶ 22.

### 1.  False Arrest/Imprisonment

"To ultimately prevail on his section 1983 false arrest/false imprisonment claim,
[Plaintiff] must show that [the Defendants] did not have probable cause to arrest him."  *Haggerty
v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. Tex. 2004).  Under federal law, "[p]robable cause is
a fluid concept – turning on the assessment of probabilities in particular factual contexts – not
readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates*, 462 U.S. 213,
232 (1983).  The question turns on whether there was "reasonably trustworthy information . . .
sufficient to warrant a prudent man in believing that the [Plaintiff] had committed or was
committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  In this case, as discussed, *ante*,
p. 9, there was sufficient reasonably trustworthy information to warrant a prudent man to reach
such a conclusion.  As a result, the Plaintiff's § 1983 claim for false arrest/false imprisonment is
without merit and should be dismissed.

### 2.  Equal Protection

"To state a claim for racial discrimination under the Equal Protection Clause, the plaintiff
'must allege and prove that he received treatment different from that received by similarly
situat[ed] individuals and that the unequal treatment stemmed from a discriminatory intent.' "
*Gomiller v. Dees*, No. 4:06CV33, 2007 U.S. Dist. LEXIS 23230, at *5 (N.D.Miss. Mar. 28,
2007) (quoting *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004)).  As discussed
above, Plaintiff has no proof that similarly situated individuals were subjected to less severe
punishment.  *Ante*, p. 16.  Plaintiff has failed, moreover, to present substantial evidence of
discriminatory intent.  *Id.*  As a result, Plaintiff's § 1983 claim for violation of his right to equal

protection is without merit and should be dismissed.

### 3. Due Process

"Students have a 'legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by . . . [the Due Process] Clause.' " *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 624 (5th Cir. 2004) (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). Even when it is clear that one is entitled to due process, "the question remains what process is due." *Goss*, 419 U.S. at 574. The answer to this question "depends on appropriate accommodation of the competing interests involved." *Id.* at 579.

The Defendants argue that there is no genuine issue of fact as to the procedural due process afforded in this case and that, as a matter of law, the Plaintiff's claim should be dismissed. The Defendants point to the substantial record evidence of the quantity and quality of the procedural safeguards employed by the Defendants. *See* Def.'s Br. at 15-19. In response, the Plaintiff does not contend that he was denied notice, or a hearing, or any other such process.[8] *See* Pl.'s Br. at 10-11. Instead, Plaintiff's sole contention is that Pope's interrogation of him constituted coercion and therefore violated his procedural due process rights. *Id.* at 11. As discussed above, the Plaintiff has cited no authority for the proposition that a student has a

---

[8] In his amended complaint, Plaintiff alleges that the Defendants violated his "right to procedural and substantive due process" and deprived him "of identifiable civil and property rights." Pl.'s Amend. Comp. at ¶ 22. In response to Defendants' motion for summary judgment, which seeks dismissal of the entire case, Plaintiff has made no attempt to substantiate or elucidate these claims. Instead, Plaintiff argues only that his constitutional rights were violated by Pope's investigation. *See* Pl.'s Br. at 5-7, 10-11. Since the Defendants met their summary judgment burden by pointing to a lack of evidence supporting the more expansive claims implied in the complaint, *see, e.g.*, Def.'s Br. at 12-19, the Plaintiff's failure to establish genuine issues of material fact with regard to these claims is fatal.

constitutional right to the presence of a parent or attorney when questioned at school by a teacher or principal. *Ante*, p. 10. Similarly, Plaintiff cites no authority for the proposition that a student has procedural due process rights implicated when a teacher or principal requires a student to rewrite his account of an incident in light of the fact that it is contradicted by the accounts provided by the other witnesses. *See* Pl.'s Br. Viewing the facts in the light most favorable to the Plaintiff, he has established only that Pope questioned him and demanded that he provide a truthful account of the altercation, outside the presence of his parent and attorney. Having concluded that these facts, assumed to be true, violate no procedural due process rights, the Court holds that Plaintiff's § 1983 claim alleging a violation of his procedural due process rights should be dismissed.

### D.  42 U.S.C. § 1985

To establish a violation of § 1985(3),[9] a plaintiff must allege and prove a conspiracy motivated by a class-based animus to deprive a person of the equal protection of the laws. *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). The Defendants have moved for summary judgment on Plaintiff's claim under § 1985, on the basis that the steps taken by the JCSD to ensure that the Plaintiff was not deprived of his rights establish that there was no conspiracy to discriminate against the Plaintiff. *See id.* (describing the multiple hearings held (at the Plaintiff's request) to evaluate the propriety of the recommended punishment). Def.'s Br. at 9. Accordingly, the Defendants have met their initial burden and the burden shifts to the Plaintiff to establish the existence of a genuine issue of material fact for trial. In his brief in opposition to

---

[9] The third provision is the only one of section 1985's three provisions that is plausibly implicated in this case. *See generally* § 1985.

the instant motion, however, the Plaintiff has offered no evidence and no argument with regard to his § 1985 claim.  Most notably, Plaintiff has offered no evidence of conspiracy.  Since a complete failure of proof concerning an essential element of the Plaintiff's claim necessarily renders all other facts immaterial, there is no genuine issue of material fact.  As a result, the Plaintiff's claim under § 1985 should be dismissed.

### E.  Title VI of the Civil Rights Act of 1964

Title VI forbids any person or institution which receives federal funds to discriminate on the basis of race, color, or national origin.  *See* 42 U.S.C.A. § 2000d.  "[P]rivate individuals may sue to enforce § 601 of Title VI and may obtain both injunctive relief and damages."  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

To the extent that Plaintiff's Title VI claim is predicated on the contention that the decision to have him arrested or expelled was based on discriminatory intent, the claim should be dismissed for the reasons set forth above.  *Ante*, p.11-17.  The Court recognizes, however, that under Title VI, "[i]ntentional discrimination can [also be] inferred by the defendant's deliberate indifference to differential treatment."  *Johnson v. Louisiana*, No. 01-2002, 2006 U.S. Dist. LEXIS 62093 (E.D.La. Aug. 30, 2006); *accord Gomiller*, 2007 U.S. Dist. LEXIS 23230, at *11-13.  Since the Plaintiff argues that the Defendants were deliberately indifferent to a racially hostile environment, the Court will evaluate this contention to determine whether there is a genuine issue of material fact.  Pl.'s Br. at 8.

The Plaintiff contends that the Defendants had actual or constructive notice that there was pervasive racial discrimination at the School and that by allowing these conditions to persist, the

21

Defendants created a hostile environment.  Pl.'s Br. at 8-10.  A district court in this circuit

recently set forth the governing law with regard to such a claim:

> According to the Department of Education, a school district violates Title VI when:
> (1) there is a racially hostile environment; (2) the district had notice of the problem;
> and (3) the district failed to respond adequately to redress the racially hostile
> environment. *Racial Incidents and Harassment Against Students at Educational
> Institutions; Investigative Guidance*, 59 Fed. Reg. 11448, 11449 (March 10, 1994).
> **A racially hostile environment is one in which racial harassment is "severe,
> pervasive or persistent so as to interfere with or limit the ability of an individual
> to participate in or benefit from the services, activities or privileges by the
> recipient."** *Id.* at 11449.  A school district must have actual or constructive notice
> of the racial harassment. 59 Fed. Reg 11450-51.  **Once on notice of a problem, a
> school district has a legal duty to take reasonable steps to eliminate a racially
> hostile environment.** *Id.* at 11450.  When a district is "deliberately indifferent" to
> its students' right to a learning environment free of racial hostility and discrimination,
> it is liable for damages under Title VI.

*Gomiller*, 2007 U.S. Dist. LEXIS 23230, at *4 (internal citations omitted) (emphasis added).

Plaintiff's contention that the Defendants were deliberately indifferent to a racially hostile

environment is not supported by any evidence and should be dismissed as a result.  Specifically,

the evidence does not raise a genuine issue regarding the steps taken by the Defendants to

eliminate a racially hostile environment.  The record indicates that twice within the school year in

question, a white student used racial epithets and that both times, Pope suspended the student.

Def.'s Ex. F at 22-23; *id.* at 38-39.  The Plaintiff has provided no evidence of such an incident

that was reported yet went unpunished.  In addition, the undisputed facts indicate that Pope met

periodically with students and told them that if they experienced any racial harassment to notify a

teacher or school administrator so that the problem could be addressed.  *Id.* at 58-73.  Pope also

instructed the general student population that the use of racial slurs was unacceptable.  *Id.* at 60.

While the evidence in the record reveals these responsive and proactive measures taken by the

Defendants, Plaintiff points to no reliable evidence of deliberate indifference by the Defendants.[10] As a result, the Court concludes as a matter of law that there is insufficient evidence to support a finding that the Defendants were deliberately indifferent to a racially hostile environment or that there was a policy of racial harassment at the School.  *See* Pl.'s Br. at 2.  Accordingly, Plaintiff's claim under Title VI should be dismissed.

### F.  Claim for Injunctive Relief

In his amended complaint, Plaintiff seeks injunctive relief against the Defendants.  Pl.'s Amend. Comp. at ¶¶ 24-27.  The Defendants contend that the Plaintiff has not established facts warranting injunctive relief.  Def.'s Br. at 19-21.  The Plaintiff has not attempted to meet his burden of establishing a genuine issue of material fact with regard to his request for injunctive relief.  His brief in opposition does not even mention the request for injunctive relief and points to no evidence that supports the request.  Finding that there is therefore no genuine issue of material fact with regard to Plaintiff's request for injunctive relief, the Court holds that the claim should be dismissed as a matter of law.

---

[10] The Court grants little or no weight to the testimony of Plaintiff's mother that, at the time she was an elementary student and high school student, she heard multiple racial slurs used and that no action was taken even though she reported the slurs to a teacher.  *See* Def.'s Ex. D at 98.  The Plaintiff's mother testified that this occurred in the 1980s.  This testimony does not establish any indifference on the part of the Defendants at a time relevant to the allegations in the instant suit.

Furthermore, the Court cannot afford weight to her testimony regarding graffiti. Plaintiff's mother testified that Plaintiff had seen racial epithets written on desks and walls at Northeast Jones High School.  *Id.* at 104.  First, Plaintiff's mother has no personal knowledge regarding the graffiti.  *See id.*  Second, and more critically, Plaintiff's mother testified that she had not reported the graffiti to any of the Defendants.  *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' claims fail as a matter of law.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendant's motion for summary judgment [Doc. # 43] is **granted** and the case is **dismissed with prejudice**.

SO ORDERED AND ADJUDGED on this, the 11th day of September, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE